STATE EX REL. MILLS, RELATOR, v. STEWART, SECRETARY
OF STATE, RESPONDENT; SOCIALIST PARTY OF MON-
TANA, INTERVENER.

(No. 5,210.)

(Submitted October 10, 1922. Decided October 19, 1922.)

[210 Pac. 465.]

*Elections — Primary Elections — Political Parties — Socialist
Party — Right to Place on Ballot — Injunction—Burden of
Proof — Organization of Party After Primary Election —
Statute Controlling.*

Elections—Right of Political Party to Place on Ballot—Failure to Hold
Primary Election.
1.   Where a political party was in existence at the time a state
primary nominating election was held and failed to designate the
names of the persons to be voted for at such election as its
candidates, it is not entitled to have the name of any person
appear on the ballot as its candidate for state office at the general
election; where, however, a party was not in existence at that
time and if after the holding of the primary election it was either
reorganized or came into existence as a new party and duly
nominated candidates in convention assembled, their names are
entitled to be placed on the ballot.

Same—Existence of Party at Time of Primary Election—Proof—In-
sufficiency.
2.   The mere filing of a nominating petition for either a municipal
or state office by a person who styles himself as belonging to a
political party, as, for instance, a Socialist, and who seeks the
nomination as a candidate of such party, in itself does not prove
the existence of such party, especially not where he seeks the
nomination for a city office, it being too local in its scope to be
of evidentiary value.

Same—Injunction—Burden of Proof.
3.   On application for writ of injunction to restrain the secretary
of state from placing the names of persons designated in the
certificate of nomination filed by a political party on the ballot
on the ground that such party was in existence at the time the
primary election was held but failed to designate their names to
be voted for at such election, petitioner has the burden of proof
to show the existence of such party at that time.

Same—Existence of Party at Time of Primary Election—Evidence—
Sufficiency.
4.   Evidence reviewed and *held* sufficient to show that at the
time of the holding of the primary election in August, 1922, the
Socialist party was not in existence in the state.

Same—Political Parties—Rules Governing.
5.   In the absence of legislative enactment, political parties are
governed by their own usages and establish their own rules, and

members thereof may form, reorganize and dissolve them at their will.

Same—Political Party—How Called into Existence—Powers.
6. A political party results from voluntary association of electors, and not from operation of law, and, in the absence of legislative regulations, possesses plenary powers as to its own affairs.

Same—Political Party—Rights—State Policy.
7. To what extent the rights of organized political parties should be recognized and regulated is a matter for the legislative department and not for the courts.

Same—Political Party Convention—Right to Control Own Affairs.
8. The state convention of a political party is the supreme judica-tory within the party of its own affairs, so long as it properly represents the electors of the state comprising the party organiza-tion, since the right to nominate and elect belongs to the electors.

Same—Political Party—Powers.
9. A political party is the judge of the election and qualification of its members; it may adopt a general policy and nominate can-didates for office to be filled by vote of the electors, and so long as it keeps within its legitimate sphere, do whatever may be neces-sary or proper to maintain its integrity and advance its interests.

Same—Socialist Party—Reorganization—Regularity of Procedure.
10. Evidence *held* to show that the procedure followed for hold-ing the mass meeting or convention for the purpose of reorganiz-ing the Socialist party in the state on September 30, 1922, was in conformity with the customs, usages and principles of the na-tional Socialist party organization and with the principles and rules governing the holding of political conventions in Montana.

Same—Political Party—Failure to Nominate Candidates at Primary Election—Evasion of Primary Law—Effect.
11. A political party may not, for the purpose of evading the initiative primary law discontinue its existence after an election and then reorganize after the next primary election and before the next general election and make nominations under the general law.

Same—Organization of Political Party After Primary Election—Statute Controlling.
12. Since the initiative primary law was not enacted to prevent nominations but to subject them to public regulation and control as far as possible and did not repeal section 612, Revised Codes of 1921 so far as it relates to political parties coming into existence after the holding of the primary election, the latter section was the only law under which the Socialist party organized in Septem-ber, 1922, could proceed to make its nominations.

Same—Injunction—Right of Elector to Bring Suit.
13. *Quaere:* May an elector who does not show some peculiar or particular interest in himself maintain an application for injunc-tion to prevent the placing of names on the official ballot?

Original application for injunction by the State of Montana, on the relation of R. M. Mills, against Charles T. Stewart, as Secretary of State, in which the Socialist party of Montana intervened.  Writ denied.

*Mr. Arthur P. Heywood,* for Relator, argued the cause orally.

*Mr. Henry C. Smith,* for Respondent; *Mr. Joseph Griffin,* for George H. Ambrose, and *Mr. James L. Wallace,* for Intervener, The Socialist Party.

MR. JUSTICE FARR delivered the opinion of the court.

The relator, an elector of the state, has made application to this court for a writ of injunction directed to Honorable Charles T. Stewart, as secretary of state, to restrain him from certifying for a place on the ballots to be used at the general election to be held on November 7, 1922, the names of the persons named in the certificate of nomination filed by the Socialist party of Montana, as a political organization, as candidates for certain state offices to be voted for at said election. The relator's claim of right to have the writ issue is based upon the allegations that the Socialist party is now, and for more than ten years last past has been, a duly organized political party within the state of Montana, and during said time has participated in the primary and general elections held in the state, but that it failed at the primary nominating election held in August, 1922, to designate the names of any persons to be voted for at said primary nominating election as candidates for nomination to the various state and district offices to be voted for at the general election.

The respondent and the Socialist party of Montana, the latter having appeared by pleading in intervention, take the position that the Socialist party, as a party organization has had no existence in the state of Montana for more than five years, and had no existence on August 29, 1922, the date of the state primaries; the organization thereof which existed in 1916 having been abandoned. It is alleged by them that on September 30, 1922, pursuant to a call duly made and advertised a convention and primary meeting was held in the city of Helena for the purpose of organizing the Socialist party in the

state and thereafter making nominations for public offices, at which time the electors and delegates in attendance at said convention did organize such a party and name it the Socialist party of Montana, and that after the organization of such party the electors and delegates assembled did then nominate as candidates of the Socialist party of Montana the persons whose names the relator by this action seeks to prevent appearing on the official ballots as candidates of such party at the forthcoming general election.

If the Socialist party of Montana was organized and in [1] existence at the time of the primary nominating election in August, 1922, then under the express provision of section 639, Revised Codes of 1921, it is not entitled to have the name of any person appear upon the ballots as a candidate for any state office at the general election. (*State ex rel. Williams* v. *Stewart, Secretary of State*, 58 Mont. 708, 198 Pac. 1118.) If, however, the party was not in existence as a political party organization at the time of the August primaries, and if on September 30, 1922, it was organized either as a reorganization of an old party or as an entirely new organization, and if it duly nominated candidates for state offices, then the case is governed by the decision of this court in the case of *State ex rel. Richardson* v. *Stewart, Secretary of State,* 58 Mont. 707, 198 Pac. 1118.

The first question for determination is whether the Socialist party did go out of existence as a political party at some time prior to the August primaries, and the burden of proof was on the relator to show the existence of such a party at that [2–4] time. He endeavored to sustain this burden by showing: (1) That for the August primaries certain persons had presented petitions requesting that their names be printed on the ballots at the primary election, as candidates for the Socialist nomination for certain of the state offices, but none of these filings were completed. These petitions were in the form required by the primary election law. (2) It was also proven that at the city primary election in the city of Livingston in

the, year 1920 a person filed as a candidate for the Socialist nomination for the office of alderman of that city, and that the same year at the primary election in the city of Butte a person filed as a candidate for the Socialist nomination for the office of mayor.    (3) There was also offered in evidence the pleadings in the case of *State ex rel. Williams* v. *Stewart, supra.*

1 and 2.   The fact of the filing of a nominating petition for either a municipal or state office by some person who styles himself a Socialist, and who seeks the nomination as a candidate of a Socialist party in itself does not prove the existence of a Socialist party as a political party organization within the state.   This is particularly true as to a petition for nomination for a city office, for it is entirely too local in its scope to be of much evidentiary value.   These nominating petitions filed for the August primaries were not completed, and the most that can be said of such petitions is that they are circumstances tending to prove: First, that the persons who signed them claimed to be members of a Socialist party—as they declared themselves to be, notwithstanding the fact that it was testified to by one of the candidates upon the trial that all of the persons but one who signed his petition were either Democrats or Republicans—and, second, that the proposed candidates sought nomination to an office as candidates of a political party which they claimed to be in existence, and which they called the "Socialist party."

3. As to the evidentiary effect of the pleadings in the case of *State ex rel. Williams* v. *Stewart, supra:* The questions of fact involved in the determination of that case were not the same as in this.   That case involved the right of certain persons who claimed to be the nominees of the Socialist party, at a mass convention said to have been held in Butte, Montana, on September 26, 1920, to a place on the official ballot to be used at the general election in 1920, as candidates for the office of presidential and vice-presidential electors of the Socialist party.   The petition for the writ recited that, at a national convention of the Socialist party, held in May of that year in

New York City, it had nominated Socialist candidates for the office of President and Vice-president, respectively, for the general election in 1920. From the allegations of the petition and the admissions made in the record at the time of the hearing, the court held that, since the party was organized and in existence at the time of the primary election so held on April 23, 1920, for presidential and vice-presidential electors, it was not entitled to have the names of any persons appear upon the official ballots as candidates for these offices at the general election. The record there disclosed that at the last preceding presidential election the Socialist party did have candidates for presidential and vice-presidential electors. The question of the right of any other nominee of that party to appear upon the official ballot at the general election was not before the court.

It is true that in that case the petition for the writ recited that there had been a mass convention of the Socialist party in the city of Butte on September 26, 1920, at which time these nominations of presidential and vice-presidential electors were made, and it is to be presumed that it was for the purpose of proving, if possible, the existence of the Socialist party as a political party organization within the state of Montana in 1920, that the record in that case was offered in evidence in this. But the record as there made is not binding upon the parties to this suit, in the absence of evidence in the present case showing what connection or relation the relator, Williams, in that suit had with the Socialist party, if the party was in fact in existence at the time. The petition there was sworn to by Williams, but just what connection he in fact had with the Socialist party, if there was one in the state at that time, has not been made to appear in this case. If the things Williams recited in that petition were true, as the court then assumed that they were, we do not understand why relator could not have now proven them in this case. The court cannot go outside of the record in any given case for a determination of the questions presented. The foregoing is all of the testimony at

all favorable to the relator's contention, and the court would have been justified in dismissing the case at the conclusion of the relator's proof because of his failure to sustain the burden the law imposed upon him.

On the part of the respondent and the intervener, there is evidence of two persons, each testifying that he had been a member of the national Socialist party for a period of twenty years or more, and that there has not been a party organization in this state for several years, and that there has not been any candidate nominated for any state office since 1916. Each of these persons was positive in his declarations, and purported to give evidence within his personal knowledge. That there was not any candidate nominated for any state office in 1920 is borne out by the fact that the Socialist party was not permitted to place upon the ballots a candidate at the general election in 1920, by the decision of this court in the *Williams Case, supra.* It must therefore be considered as proven in this case that the Socialist party, as a political party organization, was not in existence in Montana at the time of the August, 1922, primaries. To find otherwise would be to entirely disregard proof of the most positive and conclusive character.

The next questions, then, are: Was the Socialist party of Montana thereafter organized, and did the new organization nominate candidates for state offices? The determination of these questions involves a consideration of political party organizations in this state, and the legal principles applicable thereto.

The statute does not define the term "political party," and, in the absence of a statutory definition, resort must be had to the generally accepted meaning of the term. (*Davidson* v. *Hanson,* 87 Minn. 211, 91 N. W. 1124, 92 N. W. 93.) Webster defines a political party as: "A number of persons united in opinion or action, as distinguished from or opposite to the rest of a community or association; * * * one of the parts into which a people is divided on questions of public policy." In the Standard Dictionary it is defined as: "A body of people contending for antagonistic or rival opinions or policies in a

community or society, especially one of the opposing political organizations striving for supremacy in a state." The Century Dictionary defines it as: "A company or number of persons ranged on one side, or united in opinion or design, in opposition to others in the community; those who favor or who are united to promote certain views or opinions."

In the absence of legislative enactment, a political party is [5–7] governed by its own usages and establishes its own rules. Members of such parties may form them, reorganize them, and dissolve them at their will. (*Davis* v. *Hambrick*, 109 Ky. 276, 51 L. R. A. 671, 58 S. W. 779; *Davidson* v. *Hanson*, *supra*.) Political party results from voluntary association of electors, and not from operation of law, and, in the absence of legislative regulations, possesses plenary powers as to its own affairs. (*Morrow* v. *Wipf*, 22 S. D. 146, 115 N. W. 1121.) To what extent, if at all, the rights of organized political parties should be recognized and regulated by law, is a matter of public policy, to be determined by the legislative department—a matter which does not concern the courts. (*Britton* v. *Board*, 129 Cal. 337, 51 L. R. A. 115, 61 Pac. 1115.)

The state convention of a political party is the supreme [8, 9] judicatory within the party of its own affairs, so long as the convention properly represents the electors of the state comprising the party organization, for the right to nominate and elect belongs to the electors. (*State ex rel. Scharnikow* v. *Hogan*, 24 Mont. 383, 62 Pac. 583; *State ex rel. Kennedy* v. *Martin*, 24 Mont. 403, 62 Pac. 558.) A political party is the judge of the election and qualification of its members; it may adopt a general policy and nominate candidates for office to be filled by the vote of the electors of the state, and, so long as it keeps within its legitimate sphere, do whatever may be necessary or proper to maintain the integrity and advance the interests of the party. (*State ex rel. Hatch* v. *Smart*, 24 Mont. 413, 62 Pac. 591.)

Mr. Chief Justice Brantly, speaking for the court in the case of *State ex rel. Scharnikow* v. *Hogan*, *supra*, in referring

to section 1 of Article III of the Constitution, which provides that "all political power is vested in and derived from the people," says: "This guaranty, under our system, refers as well to the right of naming of candidates for public office as it does to the right of the electors to vote for the candidates at the polls. The purpose of the Australian Ballot Law is to prevent fraud, bribery, intimidation, undue influence, and other methods of interference with the free exercise of the right of suffrage by the electors, by providing for the absolute secrecy of the ballot, thus minimizing, as far as possible, these vicious influences. To this end it became necessary to print the ballot by public authority. This again required suitable regulations for the time and mode of making nominations by political parties, so that the officers intrusted with the duty of preparing and printing the ballot might be guided to a proper performance of their duties. Incidentally it was further necessary also to secure to the electors of political parties the right to conduct their own party proceedings through the medium of the convention and primary, free from interference from without."

From all the foregoing it will be seen that the right to [10] reorganize an old political party, or to organize a new one, is inherent in the electors. The law not providing a method for the reorganization of an old or the organization of a new political party within the state, the court must look to general party customs and usages and the rules and methods of procedure of the political organization itself.

It is undisputed that on September 16, 1922, a call for a Socialist mass convention to be held in Helena was made by one C. H. Paugh, who testifies that he was authorized to make such call by the national organization of the Socialist party, that the call was advertised in three papers of general circulation published in Montana, and that a copy of the call was mailed to every known Socialist in the state. This call recited that a mass convention of all voters of Montana, who believed in and conscientiously adhered to the purposes, doctrines, prin-

ciples and philosophy of the national Socialist movement, would be held at the city of Helena on the thirtieth day of September, 1922, "for the purpose of organizing and establishing the legal status of the Socialist party in and for the state of Montana as a political body in said state, and for the purpose of selecting, nominating, filing and certifying to the secretary of state the names of candidates" for the state offices therein named; also for the purpose of electing a state secretary for the Socialist party in Montana, and an executive committee.

Relator does not question either the sufficiency of the call or the good faith of the organizers. The uncontradicted evidence is that every known Socialist in Montana was mailed a copy of the call, and a copy was published in certain papers of general circulation published in the state. This notice gave information of the purpose for which the meeting was to be held, and every person adhering to the principles of the Socialist party was given an opportunity to participate thereat. It was further shown that the procedure followed in calling the meeting, and the proceedings there had were in conformity with the customs, usages and principles of the national Socialist party organization, and with the principles and rules governing the holding of political conventions and organizations, as previously announced by this court in a number of decisions. (*State ex rel. Athey* v. *Hayes,* 31 Mont. 233, 78 Pac. 486; *State ex rel. Woody* v. *Rotwitt,* 18 Mont. 502, 46 Pac. 370; *State ex rel. Russel* v. *Tooker,* 18 Mont. 540, 34 L. R. A. 315, 46 Pac. 530; *State ex rel. Metcalf* v. *Johnson,* 18 Mont. 548, 34 L. R. A. 313, 46 Pac. 533; *State ex rel. Scharnikow* v. *Hogan, supra; State ex rel. Hatch* v. *Smart, supra.*)

As has been stated, the good faith of the organizers of the party is not questioned by any evidence. If it had been shown that their purpose was to avoid the primaries, an entirely different question would have been presented for determination, [11] for nothing in this opinion contained is to be understood as holding that a political party may, for the purpose

of evading the initiative primary law, discontinue its existence after an election, and then reorganize after the next primary election and before the next general election and make nominations under the general law. The existence of good faith is an essential ingredient, and the want of it would serve to prevent recognition under the law.

It may be considered, therefore, as having been established by competent proof in this case: First, that the Socialist party of Montana was not in existence in this state at the time of the August, 1922, primaries; and, second, that it was duly organized as a party in Montana on September 30, 1922, and that after such organization its electors and delegates nominated candidates for state offices. The case, therefore, is governed by the decision of this court in the case of *State ex rel. Richardson* v. *Stewart, supra.*

The primary election law of the state, initiated by the [12] people, was for the purpose of making nominations to office by political parties only. (Secs. 632, 639, Rev. Codes 1921; *Davidson* v. *Hanson, supra; Morrow* v. *Wipf, supra.*) It makes no provision for a person to become a candidate for election to office except as the nominee of some party. In plain terms the Act says, in section 632, that the election shall be known "as the primary nominating election, for the purpose of choosing candidates by the political parties," and again in section 639 it is said that "Every political party shall nominate all its candidates for public office under the provisions of the law, and not in any other manner. * * * "

The initiative primary law having reference to nomination by political parties only, it is manifest that it can only refer to such political parties as are then in existence at the time of the primary election. The Socialist party of Montana, as a political party organization within the state, was not in existence at the time of the August, 1922, primaries, and therefore it is clear that there could not have been a nomination made in the name of the Socialist party of Montana at these primaries. Nor is it any argument against this proposition to

say that some persons sought to file as candidates for the Socialist nomination for certain offices. A person who sought to file as a candidate of a party which did not at that time exist would not have been entitled to a place on the ballot under that party name, even though the petition had been in other respects completed.

The party was organized after the primaries, and, as previously stated, there can be no question as to the right to reorganize an old or to organize a new political party. It is a right inherent in the electors of the state, and such a right is a necessary accompaniment of popular government, without which our government would be bereft of efficient vital force and in danger of the evils of absolutism. When its organization was complete on September 30, 1922, then if it desired to nominate candidates for state offices, it could not make such nomination at a primary nominating election under the initiative measure. The only primary election for which that Act provided had already been held in August. That law was not to prevent nominations, but to subject them to public regulation and control so far as possible. (*State ex rel. Reibold* v. *Duncan,* 55 Mont. 380, 177 Pac. 250.) So that the Socialist party was obliged to look to the general law for authority. The Initiative Act (Laws 1913, p. 570) did not entirely repeal the old law. The old law in many respects was left in full force and effect. In fact, the initiative measure did not in express language, contain any repealing clause at all. It only provided that every political party shall nominate all its candidates for public office under the provisions of that law, and not in any other manner. (Sec. 639, Rev. Codes 1921.) But, as has been indicated, that inhibition referred only to the political parties in existence at the time of the primary. The court has held in the case of *State ex rel. Reibold* v. *Duncan, supra,* that the initiative law has no application to special elections, and that it was not designed to furnish the exclusive means by which all candidates for public office shall be nominated. The only law, then, under which nominations could

be made by the new Socialist party thus organized on September 30, 1922, was section 612, Revised Codes of 1921, which was in existence prior to the Initiative Act, and which, as we have seen, was not repealed thereby so far as relates to special elections and to political parties coming into existence after the primary election.

The respondent and the intervener have questioned the sufficiency of the relator's pleading, but during the hearing the relator asked leave of court to amend so as to supply the defects complained of, and for the purposes of this case the amendments will be considered as having been made. It was [13] also suggested that the relator, Mills, was not entitled to be heard because it is said that he does not show some peculiar or particular interest in himself in the result sought. No authorities or briefs have been presented to the court on the question, and, while the court has entertained and considered this case on its merits, it does not now decide the question of the right of an elector, who does not make a more substantial showing of interest than is here made, to maintain such a suit.

The application for the writ is denied.

*Writ denied.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.